# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**MONIQUE MONTGOMERY**                                    **CIVIL ACTION**

**VERSUS**                                                                **20-235-SDD-RLB**

**COMENITY BANK**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on July 27, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

MONIQUE MONTGOMERY                                    CIVIL ACTION

VERSUS                                                        20-235-SDD-RLB

COMENITY BANK

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss and Motion for Sanctions against Monique Montgomery filed by Defendant, Comenity Bank ("Defendant"). (R. Doc. 82). The motion is opposed. (R. Doc. 90).

## I.    Factual Background

In her "Amended Complaint," Monique Montgomery ("Plaintiff"), proceeding *pro se,* raises various claims under federal and state law against the Defendant. (R. Doc. 59, "Amended Petition"). Plaintiff specifically alleges that Defendant "is a financial institution and credit card issuer" that promotes "identity theft by unlawfully mailing or otherwise delivering unauthorized credit cards to imposters [and consumers,] including Plaintiff [,] who have not requested credit." (Amended Petition, ¶ 4). Particularly, "Defendant accepts credit applications through" retail stores such as "Sterling Jewelers, Williams Sonoma, Abercrombie Fitch, Ann Taylor, Ashley Stewart, Buckle, Express, Eddie Bauer, Hot Topic, Torrid, Pottery Barn, [and] Talbots." (Amended Petition, ¶ 5). When a consumer applies for credit, the retail store instructs the applicant to enter their personal information on an electronic tablet. (Amended Petition, ¶ 6). The retail store does not require the presentation of a photo identification card. (Amended Petition, ¶ 6). Nor does Defendant obtain verification of the applicant's identity or the correctness of their address before delivering credit cards or credit agreements. (Amended Petition, ¶ 8). Instead, the

credit applications are either approved or denied instantly at the retail store, and the credit becomes immediately available for the applicant's use. (Amended Petition, ¶ 7).

Plaintiff contends that upon reviewing her credit reports in December 2015, she learned of the existence of multiple financial accounts that had been opened without her authorization through Lane Bryant, Victoria Secret, Limited, and New York & Co. (the "Accounts"). (Amended Petition, ¶ 17). According to Plaintiff, she never received any credit card in the mail because they were mailed to the address of an imposter in Metairie, Louisiana. (Amended Petition, ¶ 20).

Plaintiff states that from January 2016 to June 2019, she mailed at least twelve complaints and cease and desist letters to Defendant, wherein she notified Defendant that the Accounts were opened without her authorization. (Amended Petition, ¶ 21-23). Plaintiff requested that Defendant close the Accounts and delete the information it had reported to credit reporting agencies. (Amended Petition, ¶ 21). Despite Plaintiff's request, Defendant continued to hold her responsible for the fraudulent Accounts and proceeded with collection efforts. According to Plaintiff, Defendant's misconduct has caused "injuries to her privacy, security, reputation, diminished credit line, loss of ability to obtain credit, loss of ability to purchase from a credit, loss of ability to benefit from a credit line, and emotional distress." (Amended Petition, ¶67).

## II.    Procedural Background

This case was removed to this Court on April 17, 2020. Due to the severeness of Defendant's request to dismiss Plaintiff's claim with prejudice, the Court carefully walks through each instance of Plaintiff's misconduct.

**A.      Failure to Comply with the Court's Order to File Joint Status Report**

On May 12, 2020, the Court issued a Scheduling Conference Order which set the scheduling conference for July 9, 2020. (R. Doc. 4). Plaintiff was required to file a joint status report by June 25, 2020. (R. Doc. 4). Plaintiff failed to file the report so the Court reset the conference for August 27, 2020. (R. Doc. 5). Likewise, Plaintiff's deadline to file the report was extended to August 13, 2020. The Court warned Plaintiff that failure to comply would result in an Order to Show Cause being issued. (R. Doc. 5).

Again, Plaintiff failed to file the report as instructed; thereby again causing the Court to reset the scheduling conference for October 8, 2020 and the deadline to file the report as September 24, 2020. (R. Doc. 13). The Court further ordered that Plaintiff show cause as to why sanctions should not be imposed for her failure to file the status report as directed. (R. Doc. 13).

For a third time, Plaintiff failed to comply with the Court's order. (*See* R. Doc. 20). Accordingly, on January 19, 2021, the Court issued a Show Cause Order requiring Plaintiff to show cause, in writing, on or before February 2, 2021, as to why her case should not be dismissed for (1) failure to comply with various Court orders, (2) failure to respond to a prior show cause order, (3) failure to communicate with the defense as ordered by the Court, and (4) failure to respond or oppose the Motion to Compel Arbitration. (R. Doc. 20). Yet again, Plaintiff failed to submit any response.

On April 28, 2021, the undersigned recommended dismissal of Plaintiff's claims for failure to prosecute and failure to comply with the Court's orders. (R. Doc. 23). That same day, Plaintiff filed a Motion to Amend Petition and Emergency Ex Parte Motion to Vacate. (R. Doc. 24). This filing did not address the January 19, 2021, show cause order or otherwise identify any reasons why Plaintiff was prevented from prosecuting her action.

On May 10, 2021, Plaintiff filed an objection to the undersigned's Report and Recommendation, as well as the joint status report. (R. Docs. 27, 29). In her objection, Plaintiff stated that it was not her "intention to engage in dilatory tactics or disobey any of the Court's orders." (R. Doc. 27 at 1). Plaintiff explained that she could not file the report on time because she "was in and out of the hospital from early October 2020 to late March 2021"[1] as a result of "a nearly fatal car accident." (R. Doc. 27 at 1). Upon reviewing Plaintiff's objection, the district judge "decline[d] to adopt the well-reasoned and supported *Report and Recommendation* of the Magistrate Judge because the *pro se* Plaintiff has articulated circumstances beyond her control that may have prevented diligent prosecution of her claims." (R. Doc. 35 at 1). Plaintiff, however, was "admonished that any further failure to abide by the Court's Orders in a timely manner will result in Dismissal *with prejudice*." (R. Doc. 35 at 2) (emphasis added).

### B.    Failure to Participate in Scheduling Conference

On July 13, 2021, the Court entered a Scheduling Conference Order setting a telephone scheduling conference for September 9, 2021, at 9:00 a.m. (R. Doc. 41). Plaintiff did not participate in the conference as ordered. In addition, Plaintiff never informed the Court that she would not be able to participate. As a result, the undersigned recommended that, consistent with the district judge's prior ruling, Plaintiff's claims be dismissed with prejudice. (*See* R. Doc. 50).

In Plaintiff's objection to that Report and Recommendation, Plaintiff explained that due to circumstances surrounding Hurricane Ida, she was unsure if the scheduling conference was reset. (*See* R. Doc. 54-1). After reviewing Plaintiff's objection, the undersigned vacated its Report and Recommendation and reset the conference for October 21, 2021. (R. Doc. 55).

---

[1] Notably, Plaintiff's hospitalization did not occur until three months after the status report was originally due.

**C.     Failure to Participate in the Discovery Process**

At the scheduling conference on October 21, 2021, the Court discussed the status of this matter and addressed certain pending discovery requests. The Court also made it very clear to Plaintiff that she would be subject to discovery and that "certain threshold issues, such as whether there was a valid agreement between the parties . . . may be an issue ripe for early determination." (R. Doc. 56). On March 11, 2022, Defendant served its First Set of Interrogatories, Requests for Production of Documents, Requests for Admission to Plaintiff, and a Notice setting Plaintiff's deposition for April 19, 2022. (R. Docs. 68-1 at 1, 68-2).

That same day, Plaintiff advised Defendant that she was unavailable to sit for a deposition on April 19, 2022. (R. Doc. 68-3 at 7). Defendant responded by requesting that Plaintiff provide her availability during the weeks of April 18 or 25, 2022. (R. Doc. 68-3 at 6-7).

On March 14, 2022, Plaintiff e-mailed Defendant to discuss a Notice of Intent to Serve Subpoena. (R. Doc. 68-3 at 5). Defendant responded by explaining the permissibility of issuing a subpoena under the Federal Rules of Civil Procedure and reiterated its request for Plaintiff to provide dates for her deposition. (R. Doc. 68-3 at 4). Defendant further stated that if Plaintiff did not promptly provide alternate dates, it would proceed with Plaintiff's deposition on the scheduled date of April 19, 2022. (R. Doc. 68-3 at 4).

In response, Plaintiff stated that she never received a request for alternate dates, and that her availability was "severely limited" because Defendant "waited until the last minute to perform discovery." (R. Doc. 68-3 at 4). She further stated that she would provide deposition dates after she "thoroughly review[ed] [her] schedule." (R. Doc. 68-3 at 3).

On March 15, 2022, after corresponding with Defendant regarding its availability for Plaintiff's deposition, Plaintiff accused Defendant of serving a "late notice" which was "tying

[her] hands," as there was "no way possible that [she could] be prepared for a deposition that's scheduled just three days after the deadline to respond to [Defendant's] discovery request." (R. Doc. 68-3 at 2).

After receiving no alternate dates, Defendant filed a Motion to Compel Plaintiff's deposition on March 24, 2022. (R. Doc. 68).

On March 25, 2022, the parties and the undersigned participated in a telephone conference, during which Plaintiff informed the Court she was not available for the noticed deposition on April 19, 2022, because of a three-week out of state work conference. (R. Doc. 71). She could not provide any other dates for her deposition. Defendant even offered to conduct the deposition at the location of the conference.

Plaintiff's resistance to discovery was apparent, as was her efforts to obstruct defendant's ability to schedule her deposition. The Court specifically informed the Plaintiff that despite her attempts to claim a scheduling conflict on any proposed dates, "her deposition would occur in this action." (R. Doc. 71 at 1). Plaintiff ultimately agreed to appear for her deposition on April 14, 2022. (R. Doc. 71). To accommodate the earlier deposition date and ensure that the defense had Plaintiff's discovery responses in advance of the deposition, the Court ordered that Plaintiff provide written discovery responses to Defendant on or before April 8, 2022. (R. Doc. 71, 75).

On April 8, 2022, despite prior correspondence by email, Plaintiff mailed her written responses to Defendant, ensuring that the defense would only receive them after April 8, 2022. (R. Doc. 76-1). Defendant received these written responses on April 11, 2022. (R. Doc. 76 at 2). This delay was inconsequential, however. For each of the 18 interrogatories, 24 requests for production, and 19 requests for admission, Plaintiff responded with the identical objection:

> Objection. This request is solely intended to harass, annoy, or embarrass me. This request is not reasonably calculated to lead to the discovery of relevant,

admissible evidence. I expressly decline to give my consent to litigate new issues that have not been stated in the pleadings. This response is being presented in good faith and not for an improper purpose.

(*See generally* R. Doc. 76-1).

Additionally, on April 8, 2022, Plaintiff filed a Motion for Protective Order requesting that the Court bar Defendant "from seeking discovery on unpled and barred matters and matters that are likely to result in harassment, annoyance, embarrassment, and humiliation," and "from making any representations to Plaintiff that pressure, coerce, or otherwise mislead her into making admissions, denials, or any other decisions that are against her free will or likely to cause her to waive her rights out of fear of harm." (R. Doc. 74 at 1).

In particular, Plaintiff sought to bar discovery of her "private information, phone records, marriages, divorces, personal relationships, employment history, previous addresses, financial records, health records, social security number, criminal history, private and confidential matters, and third persons and other matters that have not been stated in the pleadings and/or have no connection to the claims or defenses stated therein." (R. Doc. 74-1 at 1). According to Plaintiff, "[b]eing required to answer invasive questions on unpled allegations, private matters, and matters that are completely irrelevant to the claims/defense are unduly burdensome." (R. Doc. 74-1 at 2). Plaintiff further requested the Court to bar "[A]ccount-related questions" because the "pleadings clearly allege that the credit cards were opened by an imposter." (R. Doc. 74-1 at 2). Therefore, "discovery on such matters will never be relevant to the claims or defenses and is a waste of time and money." (R. Doc. 74-1 at 2).

In denying Plaintiff's Motion for Protective Order, the Court explained that "Plaintiff's entire lawsuit is premised on the assertion that her identity was stolen and that some other individual opened" the Accounts. (R. Doc. 78 at 5). Accordingly, "Plaintiff's own claims put at issue her financial records and other identifying information listed above," and any "discovery

pertaining to the identity of the individual who sought and obtained the four credit cards at issue

under Plaintiff's name, and how those cards were used, falls within the scope of discovery

regardless of whether that information is sought from Plaintiff or third parties." (R. Doc. 78 at 5).

      The Court also noted that:

> **It is apparent from the record that Plaintiff does not want this deposition to move forward and does not want it to be subject to discovery. The Court has consistently informed her that position is without merit. Plaintiff will answer discovery and will provide deposition testimony and her filing of frivolous motions will not change that. The Court finds that all of the topics of discovery complained of by the Plaintiff are in fact appropriate, within the scope of discovery in this action, and shall be answered.**

(R. Doc. 78 at 9) (emphasis in original). Accordingly, the Court ordered "Plaintiff to provide

supplemental responses to Defendant's" written discovery requests, "within 7 days of the date of

[its] Order." (R. Doc. 78 at 10). In its opposition, the defense sought $900 in attorney's fees. (R.

Doc. 77-1 at 2). The Court ordered Plaintiff to "file any opposition to an award of expenses

sought by Defendant pursuant to Rule 37(a)(5)(B)" within 7 days of the Order. (R. Doc. 78 at

11). Importantly, the Court warned Plaintiff "that failure to comply with [the] Order [would]

result in sanctions pursuant to Rule 37(b)(2)(A), **up to and including dismissal of this action**

**with prejudice**." (R. Doc. 78 at 11) (emphasis in original).

      To date, Plaintiff has not provided supplemental discovery responses or filed an

opposition to Defendant's request for an award of expenses.

      On April 14, 2022, Plaintiff appeared for her deposition. (R. Doc. 82-15). The deposition

began at 9:16 am and ended at 9:28 am. (R. Doc. 82-15 at 5). The bulk of the deposition

consisted of Plaintiff (seemingly) reading a pre-written statement. Pertinently, after stating her

full name for the record and receiving instructions from Defendant's counsel, Plaintiff stated:

> So I object to all questions. We discussed this in writing already. I have no reason
> to believe that you have any type of defense. When I say "you," I'm referring to

Comenity. That Comenity has any defense to this suit. No allegations have been
cited in the pleadings that have been raised outside of the amended complaint.

(R. Doc. 82-15 at 6).

After being asked to slow down, so that the court reporter could capture her statement,
Plaintiff went on to state her objection to all questioning. (R. Doc. 82-15 at 7). Her objection
consumes four pages of the transcript. (R. Doc. 82-15 at 8-11). When Defendant's counsel tried
to interject, Plaintiff asked if he was "hard of hearing" and accused him of "trying to manipulate"
her into waiving her rights. (R. Doc.82-15 at 13). Plaintiff then reiterated that she objected to any
questioning and left the deposition. (R. Doc. 82-15 at 13).

On April 29, 2022, Defendant filed the instant Motion to Dismiss and Motion for
Sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) and 41(b) and 28 U.S.C. § 1927. (R. Doc.
82 at 1).

## III.    Arguments of the Parties

Defendant argues that Plaintiff abused the leniency granted to her as a *pro se* litigant and
needlessly ran up the cost of litigation through frivolous pleadings and "attorney ghostwriting."
(*See* R. Doc. 82-1 at 5). Defendant further contends that Plaintiff has made threats to opposing
counsel, false statements, and has shown disregard to deadlines and Court Orders. Accordingly,
Defendant requests that the Court dismiss Plaintiff's claims and issue sanctions for costs borne
by Defendant in the course of this litigation. (R. Doc. 82-1 at 6).

First, Defendant contends that Plaintiff's clear record of dilatory and costly conduct
makes dismissal pursuant to Rule 37(b)(2)(A)(v) appropriate. (R. Doc. 82-1 at 20). According to
Defendant, Plaintiff has "not made any genuine attempt to comply" with this Court's discovery
orders, which has hindered Defendant's ability to obtain discovery. (R. Doc. 82-1 at 22).

Accordingly, Plaintiff's claims should be dismissed with prejudice under Rule 37. (R. Doc. 82-1 at 22).

Next, Defendant argues that dismissal under Rule 41(b) is appropriate for Plaintiff's "failure to comply with the Federal Rules of Civil Procedure" and numerous Court Orders. (R. Doc 82-1 at 23-24). Defendant states that Rule 41 provides for dismissal with prejudice "when there is a clear record of delay or contumacious conduct by the plaintiff and lesser sanctions would not serve the best interests of justice." (R. Doc. 82-1 at 24) (citing *Daggs v. Lexington Ins. Co.*, No. CIV.A. 07-7991, 2009 WL 3353226, at *3 (E.D. La. Oct. 15, 2009) (quoting *Ford v. Sharp,* 758 F.2d. 1018, 1021 (5th Cir. 1985)). Defendant alleges that all factors which courts consider in contemplating an involuntary dismissal under Rule 41(b) are present here.

Lastly, Defendant argues that it should be awarded attorney's fees, costs, and expenses in the full amount of $87,298.47 under 28 U.S.C. § 1927. (R. Doc. 82-1 at 25). It alleges that, while § 1927 sanctions are punitive in nature, there is clear and convincing evidence of Plaintiff's "bad faith, improper motive, or reckless disregard of the duty owed to the court." (R. Doc. 82-1 at 26). Defendant asserts that it is within this Court's power, in exceptional cases, "to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop," when fees would not have been incurred "but for" a party's misconduct (R. Doc. 82-1 at 26) (citing *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187, 197 L. Ed. 2d 585 (2017)). According to Defendant, this case warrants sanctions because it was initiated by Plaintiff "with false pretenses" and every cost incurred by Defendant is attributable to Plaintiff's conduct. (R. Doc. 82-1 at 27).

Plaintiff's Opposition does not attempt to rebut or justify her noncompliance with the Court's orders. Instead, Plaintiff argues that Defendant has not made any meritorious defense,

which precludes it from partaking in the discovery process—irrespective of this Court's prior directives that Plaintiff must comply with discovery requests. (R. Doc. 90 at 2). According to Plaintiff, her Motion for Protective Order "gave notice to Defendant that there was no defense to any of her claims." (R. Doc. 90 at 1). Defendant, however, did not amend its answer after receiving Plaintiff's Motion for Protective Order, which constitutes a waiver of its defenses. (R. Doc. 90 at 2). Plaintiff, therefore, contends that 'Defendant is precluded from seeking discovery concerning unpled defenses.' (R. Doc. 90 at 2) (quoting *Lifeguard Licensing Corp. v. Kozak,* No. 15 Civ. 8459, 2016 WL 3144049, *1 (S.D. N.Y. May 23, 2016)).

Plaintiff further argues that she is "not subject to dismissal or sanctions under any rule or any discretionary authority," because she is "not bound by any" law, "except those prescribed by nature." (R. Doc. 90 at 4). According to Plaintiff, "[a]ll laws, rules, and regulations are unconstitutional and lacking due process." (R. Doc. 90 at 4) (internal citations and quotation marks omitted). Accordingly, any order by this Court to dismiss her claims would be a "violation of the judge's oath in office," and "any judge in this Court that threatens to deprive Plaintiff['s] constitutional rights shall face the self-executing consequences of crime and punishment." (R. Doc. 90 at 5).

## IV.    Law and Analysis

### A.    Dismissal Pursuant to Fed. R. Civ. P. 37(b)(2)(A) and 41(b)

"Federal district courts have the inherent power, as well as the authority expressly granted under the Federal Rules of Civil Procedure, to impose sanctions where warranted." *Reyes v. Julia Place Condominiums Homeowners Association, Inc.,* No. 12-2043, 2016 WL 5871278, at *2 (E.D. La. Oct. 7, 2016). "When parties or their attorneys engage in bad faith conduct, a court should ordinarily rely on the Federal Rules as the basis for sanctions" prior to

resorting to its inherent powers. *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1410 (5th Cir. 1993) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991)).

Rule 37 of the Federal Rules of Civil Procedure provides for the imposition of sanctions against a party who fails to obey an order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2)(A). Appropriate sanctions include the following:

> **(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> **(iii)** striking pleadings in whole or in part;
> **(iv)** staying further proceedings until the order is obeyed;
> **(v)** dismissing the action or proceeding in whole or in part;
> **(vi)** rendering a default judgment against the disobedient party; or
> **(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii); *see also* Fed. R. Civ. P. 37(d)(1)(A)(ii) (providing that the court may order sanctions if "a party, after being served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response."). Instead of or in addition to these permitted sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Similarly, Rule 41(b) states that "if the plaintiff fails to prosecute" or "comply with a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). An award of severe sanctions under Rules 37 or 41 (such as dismissal with prejudice) is only appropriate where a lesser sanction would not substantially achieve the desired deterrent effect. *See United States v. $49,000 Currency,* 330 F.3d 371, 376 (5th Cir. 2003); *Callip v. Harris Cnty. Child Welfare Dep't,* 757 F.2d 1513, 1519 (5th Cir. 1985) (explaining that an

involuntary dismissal with prejudice is characterized "the ultimate sanction"). Accordingly, a dismissal with prejudice is improper unless the case history shows (1) a clear record of delay and contumacious conduct by the plaintiff, and (2) that a lesser sanction would not better service the interest of justice. *Haynes v. Turner Bass & Associates,* No. 20-40787, 2022 WL 2383855 (5th Cir. July 1, 2022). Additionally, the violation of the discovery order must be attributable to the client instead of the attorney. *Moore v. CITGO Ref. & Chemicals Co., L.P.,* 735 F.3d 309, 316 (5th Cir. 2013) (internal quotation marks omitted).

"In most cases, a plain record of delay or contumacious conduct is found if one of the three aggravating factors is also present: (1) delay caused by the plaintiff; (2) actual prejudice to the defendant; or (3) delay as a result of intentional conduct." *Griggs v. S.G.E. Mgmt., L.L.C.,* 905 F.3d 835, 844 (5th Cir. 2018) (internal citations and quotation marks omitted). Here, all three aggravating factors are present.

   *1.  Plaintiff has willfully delayed the prosecution of the action.*

To start, there is a clear record of delay. As detailed above, the Court had to reset the initial scheduling conference on multiple occasions due to Plaintiff's failure to file a status report. This rescheduling caused the action to be delayed for over one year from the date of Defendant's removal. (*See* R. Docs.4, 5, 13, 29). Even after Plaintiff delayed filing the status report, and despite being warned by the district judge that further delay may result in dismissal of the matter, Plaintiff failed to attend the status conference or provide notice of her inability to attend. (*See* R. Docs. 49, 50). Nevertheless, the Court exercised leniency by vacating its second recommendation to dismiss Plaintiff's claim and resetting the conference once again. (*See* R. Docs. 50, 55, 56).

In the action's two-year life span, Plaintiff has done very little to progress the matter. All that she has attributed to the action is the filing of a voluntary "Notice of Dismissal without Prejudice" and several other frivolous motions, including a Motion for Laches and Motion for Protective Order. (*See* R. Docs. 8, 28, 74). Each of these motions are illustrations of Plaintiff's desire to have an unjustified favorable ruling and her unwillingness to participate in the judicial process.

Once discovery was commenced, Plaintiff has obstructed every attempt by the defense to move this matter forward. Plaintiff has likewise disregarded the Court's instructions regarding topics and the scope of discovery and thereby needlessly increased the costs and expenses of the defense, wasted the resources and time of the Court, and furthered delayed any progress toward resolution.

2. *Plaintiff's delay and disobedience to Court orders is intentional and has caused substantial prejudice to the Defendant.*

Additionally, Plaintiff defied the Court's order to (1) provide supplemental responses to Defendant's written discovery requests, within seven days of the date of its April 13, 2022, order and (2) provide deposition testimony on all topics that are within the scope of discovery of this action. (*See* R. Doc. 78 at 9). The Court's order expressly provided that "**Plaintiff will answer discovery and will provide deposition testimony.**" (R. Doc. 78 at 9) (emphasis in original).[2] The Court further stated that Defendant's "**topics of discovery […] shall be answered.**" (R. Doc. 78 at 9) (emphasis in original). Despite this clear order, Plaintiff emailed Defendant a "Reservation of Rights" the day before her deposition, which (seemingly) provided that she objects to all questioning. (R. Doc. 82-15 at 8). During the deposition, Defendant asked Plaintiff

---

[2] Plaintiff was also instructed that "her deposition would occur" (R. Doc. 71 and again that "Plaintiff's deposition will take place in this action." (R. Doc. 75).

if she refused to answer any questions to which she responded: "Did I not say that I object to any questioning? Thank you. I'm gonna go." (R. Doc. 82-15 at 13). Plaintiff then left the deposition without providing any answers to any questions. This is no different than simply refusing to appear. Plaintiff's defiance cannot be characterized as anything other than willful, and, given her *pro se* status, her conduct is attributed to only herself.

Plaintiff's refusal to engage in discovery has caused actual prejudice to Defendant. First, Defendant incurred needless cost by filing a motion to compel Plaintiff's deposition (which proved fruitless) and traveling from Nashville, Tennessee to Baton Rouge, Louisiana to take Plaintiff's deposition. Second, Defendant has been forced prepare its defense without access to relevant information regarding Plaintiff's claims of identity theft, including "whether [Plaintiff] lived at the address associated with her [Accounts], whether the [Accounts] from which payments were made were her bank accounts, and whether [Plaintiff's] voice appears on the number call recordings on the [A]ccounts." (R. Doc. 82-1 at 22).

The Fifth Circuit has recognized that plaintiffs, having initiated the action, have a duty to cooperate with the defendants and the court in the prosecution of the action. *See Paskauskiene v. Alcor Petrolab, L.L.P.,* 527 F. App'x 329, 334 (5th Cir. 2013) (explaining that the plaintiff's failure to cooperate in discovery caused "substantial prejudice" to the defendant). A plaintiff's "failure to do so is determinative" of whether Plaintiff's claims should be dismissed with prejudice. *Id.*

### 3. Lesser sanctions will not better serve the interest of justice

Finally, the Court finds that lesser sanctions are insufficient to properly deter Plaintiff's conduct from recurring. In addition to Plaintiff's violation of the Court's most recent discovery orders, Plaintiff has violated numerous orders of this Court. (R. Docs. 4, 5, 11, 13, 20, 78). There

is no basis to believe that Plaintiff will ever participate in discovery considering her disregard for every order to do so.

The Court previously found that Plaintiff's filing of a frivolous Motion for Protective Order (R. Doc. 74) rendered just an award of expenses to Defendant. (R. Doc. 78 at 10). The Court, however, provided Plaintiff an "opportunity to be heard" with respect to Defendant's award of expenses. Despite the impending monetary sanctions, Plaintiff did not avail herself of the opportunity to refute Defendant's award of expenses, and she has continued to ignore the Court's repeated admonitions of the possible dismissal of the action with prejudice. This suggests that Plaintiff's conduct is likely to continue, regardless of any impact a lesser sanction may have in harming the merit of her claims.

Having considered the record, the Court finds that Plaintiff's conduct constitutes a willful intention to disobey the Court's explicit orders. Given Plaintiff's complete disregard for the Court's orders, the interest of justice would not be served by lesser sanctions. Thus, the Court finds dismissal with prejudice to be the only appropriate sanction.

**B.      Attorney's Fees**

In addition to a dismissal with prejudice, Defendant also requests an award of attorney's fees, costs, and expenses pursuant to 28 U.S.C. § 1927. The defense submitted an affidavit stating that "Comenity has spent $82,119.97 in attorney's fees and $5,170.80 in expenses defending against Ms. Montgomery's claims." (R. Doc. 82-14 at 3).

Section 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

The Fifth Circuit, however, has not yet determined whether a *pro se* litigant can be sanctioned under § 1927. *See Simmons v. Methodist Hosps. Of Dallas,* 632 F. App'x 784, 787 n.5 (5th Cir. 2015) ("We note that this court has not yet addressed whether a pro se litigant can be subject to sanctions under section 1927 and need not do so today."). One court in the circuit has noted that the district courts in the circuit are split as to whether § 1927 applies to pro se litigants, with the majority concluding that they are not. *See Gallagher v. Paxton*, 4:18-CV-575-ALM-CAN, 2019 WL 5390546, at *2 (E.D. Tex. May 15, 2019) (citing cases and finding that § 1927 is not intended to apply to non-attorney *pro se* litigants).

While the Court has no reason to doubt the accuracy of the amounts represented in the affidavit, no other information was provided. The Court is unable to review any billing records in order to determine whether the amounts billed for specific tasks were reasonable under the circumstances, whether billing judgment was appropriately exercised, whether any charges were duplicative, and what increments of billing time were used. In addition, given the lack of settled authority, the recommended sanction of dismissal with prejudice, and the awarding of certain costs and fees set forth below, even if Section 1927 is appropriately applied to pro se litigants, the Court declines to exercise its discretion in recommending an award of all expenses and fees. *See Eustice v. Louisiana Through Board of Supervisors of Louisiana State*, 18-1008-SDD-RLB, 2020 WL 3520298, at *10 (M.D. La. Jun. 29, 2020) ("Given the sanction of dismissal with prejudice, the Court finds it inappropriate to award additional sanctions under this statute even if available to sanction pro se litigants."), *report and recommendation adopted*, 2020 WL 3966320.

Nevertheless, Rule 37(b)(2)(c) provides that "in addition to" other sanctions "the court must order the disobedient party […] to pay the reasonable expenses, including attorney's fees, caused by the failure" to obey an order to provide or permit discovery. Generally, the Court is

hesitant to issue an award of expenses in addition to a dismissal with prejudice. Under the circumstances of this case, however, and in light of Plaintiff's willful conduct, disregard for the judicial process, and threats to the Court warrant an award of expenses. (*See* R. Doc. 90 at 4) (stating that any order by this Court to dismiss Plaintiffs claims would be a "violation of the judge's oath in office," and "any judge in this Court that threatens to deprive Plaintiff['s] constitutional rights shall face the self-executing consequences of crime and punishment.").

In *Paskauskiene*, the Fifth Circuit affirmed a district court's award of attorney's fees and costs to the defendant in addition to a dismissal with prejudice pursuant to Rule 37. 527 Fed. App'x at 334. In that case, the plaintiff refused to make herself available for a deposition, causing the defendant to file a motion to compel the plaintiff's deposition. The court ordered the plaintiff appear at the deposition and warned that "should she fail to appear," all of her claims and causes of action were "at risk" of prompt dismissal. *Id.* at 332. Thereafter, the plaintiff filed a motion to quash the notice of dismissal, which was denied by the court. *Id.* Despite the court's denial of her motion to quash, the plaintiff failed to appear at the deposition. The court, after awarding expenses to the defendant for the plaintiff's failure to appear, ordered the plaintiff, once again, to appear for a deposition. *Id.* At the deposition, the plaintiff refused to answer any questioning and left the deposition "without being excused." *Id.* As a result, the defendant requested that the lawsuit be dismissed with prejudice, and that it be granted attorney's fees and costs incurred as a result of the plaintiff's non-compliance. *Id.*

The court granted the motion dismiss, explaining that "the record shows a consistent pattern by plaintiff of attempting to avoid her obligation to cooperate in the discovery process." *Id.* at 333. The court further awarded the defendant attorney's fees and costs in the amount of $6,247.30. *Id.*

In affirming the district court's ruling, the Fifth Circuit found that (1) given the plaintiff's *pro se* status, the plaintiff's conduct was attributable to no one but herself, and (2) the repetitive nature of her actions in light of repeated court warnings strongly indicates that she did not act unintentionally. *Id.* at 334. "More fundamentally, however, without the ability to take [the plaintiff's] deposition, [the defendant] faced substantial prejudice in defending itself in [the] litigation." *Id.* Accordingly, the dismissal of plaintiff's complaint was not in error and "the district court did not err in holding that [the plaintiff's] failure to comply with its orders was not substantially justified." *Id.*

In this matter, the Court likewise finds that Defendant is entitled to an award of reasonable expenses pursuant to Rule 37(b)(2)(c) for the costs and expenses incurred in bringing the instant motion as well as the related filings necessary in light of the relief requested (R. Docs. 83, 84). In addition, the Defendant is entitled to all costs and expenses associated with the Plaintiff's failure to participate in her deposition. This includes attorneys fees for preparation and participation, travel expenses, costs associated with reserving the location of the deposition, as well as any court reporter fees and transcript costs.

Defendant shall submit appropriate supporting documentation regarding the deposition and the instant motion **within 7 days**.

Additionally, Plaintiff has not, in accordance with the Court's April 13, 2022, order (R. Doc. 78), provided any objection to the Defendant's request for reasonable attorney's fees in connection with the denial of Plaintiff's Motion for a Protective Order. Accordingly, Defendant is also entitled to an award of attorney's fees in the amount of $900.

**V.    Conclusion**

**IT IS RECOMMENDED** that Defendant's Motion to Dismiss and Motion for Sanctions against Monique Montgomery (R. Doc. 82) be **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's action be **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that, pursuant to Rule 37(b)(2)(C), Defendant is entitled to an award of the reasonable attorney's fees and costs caused by Plaintiff's failure to participate in the April 14, 2022 deposition as mandated by the Court's April 13, 2022 order (R. Doc. 78) as well as those incurred in bringing the instant motion. In connection with this award, Defendant shall, within **7 days** of the docketing of this Order, file an affidavit setting forth the reasonable amount of costs and attorney's fees that were so incurred.

**IT IS FURTHER ORDERED** that, consistent with the Court's April 13, 2022 order (R. Doc.78), Defendant be awarded $900 in connection with the denial of Plaintiff's Motion for Protective Order.

Signed in Baton Rouge, Louisiana, on July 27, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**